UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KALVIN SCHANZ,

     Plaintiff,

v.

CHARTER TOWNSHIP OF
TROWBRIDGE, et al.,

     Defendants.

_____/

Case No. 1:26-cv-186

Hon. Hala Y. Jarbou

## OPINION

Kalvin Schanz alleges that the Charter Township of Trowbridge agreed to sell him an old church for a dollar, causing him to sink significant time and money into renovating it.  A year later, the Township took back possession of the property, arrested Schanz for trespassing on it, and demolished the church.  Schanz now sues the Township, Township Supervisor Jeff Kaylor, and Allegan County Sheriff's Deputy Brandon Meyer under 42 U.S.C. § 1983 and state law, asserting claims for deprivation of procedural due process, in violation of the Fourteenth Amendment (Count I); false arrest, in violation of the Fourth Amendment (Count II); taking of private property without just compensation, in violation of the Fifth Amendment (Count III), and common-law fraud (Count IV).  Defendants move to dismiss all counts (ECF No. 25).

For the reasons explained below, the Court will grant in part and deny in part the motion to dismiss.  The Court will dismiss Schanz's claims for false arrest against all Defendants and his due process claims against Meyer and Kaylor, and dismiss Meyer from the case.  Schanz's surviving claims are his takings claim and due process claim against the Township and his fraud

claims against Kaylor and the Township.  The Court will also deny Schanz's motion to file an amended complaint (ECF No. 35).

## I. BACKGROUND

This case concerns a 157-year-old church that formerly stood in Trowbridge Township. (Am. Compl. ¶ 16, ECF No. 17.)  In December of 2021, the owner of the church conveyed the property to the Township.  (*See* Deed, ECF No. 9-1.)  Plaintiff Schanz had a familial connection to the church and wanted the building to be preserved.  (Am. Compl. ¶ 16.)  In late 2021 or early 2022, Township Supervisor Jeff Kaylor told Schanz that "[t]he Township will tear down the church unless someone fixes it up," to which Schanz responded that he would fix it.  (*Id*. ¶ 19.) Specifically, Schanz promised that he would clean the church, provide materials and labor to repair it, and maintain it in the future if the Township agreed not to demolish it.  (*Id.* ¶ 20.)  Over the next couple days, Schanz rented the necessary equipment to work on the church and, along with five others, began to restore the church's steeple.  (*Id.* ¶ 21.)

A few days after their conversation, Kaylor gave Schanz the key to the church and told him "that the Township Board had agreed to refrain from demolishing the church and to sell the church property to Schanz for one dollar, provided Schanz would repair, preserve, and maintain the church and the surrounding property for the public good."  (*Id.* ¶ 22.)  Schanz accepted the offer and gave Kaylor about $10.  (*Id.*)  Kaylor replied, "You don't have to do that now," but Schanz tossed the money to him and Kaylor took it.  (*Id.*)

By March of 2022, Schanz had done extensive work on the church and expended a significant amount of his own money on it.  (*Id.* ¶ 24.)  But around this time, Kaylor approached Schanz and told him that the Township had a new request: It wanted Schanz to move the church off the property.  (*Id.*)  Schanz objected that this requirement was not part of their initial agreement, and that the church should remain in place due to its connection to the community.  (*Id.* ¶ 25.)

Kaylor did not at that time attempt to take back the church or reassert the Township's ownership of the property.  (*Id.*)

Schanz alleges that on September 1, 2022, Kaylor falsely informed the Township Board that Schanz had agreed to move the church off the Township's property.  The Board voted to allow Schanz to move the church by November 1, 2022.  (*Id.* ¶ 27.)  Kaylor told Schanz about the Board's decision a couple days later, but Schanz again refused to move the church.  (*Id.* ¶ 28.)  Sometime in November of 2022, Kaylor told Schanz that the church would be demolished soon and Schanz needed to vacate it.  Schanz responded, "You will have to evict me."  (*Id.* ¶ 29.)  On January 2, 2023, Kaylor contacted Deputy Brandon Meyer of the Allegan County Sheriff's Office and requested that Schanz be removed from the church.  (*Id.* ¶ 30.)  Meyer called Schanz and explained that the church was Township property and Schanz would be removed if he continued to occupy it.  Schanz responded that he had purchased the church from the Township and that he would not allow it to be demolished.  (*Id.* ¶¶ 30–31.)

The Township planned to demolish the church on January 16, 2023.  On that day, Schanz saw the demolition equipment and tried to request an injunction in state court, but the courts were closed for Martin Luther King, Jr., Day.  (*Id.* ¶ 36.)  Schanz then called the Allegan County Sheriff's Office and stated that the excavator was trespassing on his property.  (*Id.* ¶ 37.)  Later that day, Schanz spoke to Meyer on the phone and explained that he had a right to the property and had left his tools inside the church.  Meyer replied that he would not help Schanz retrieve his tools, and that Schanz was not permitted to be on church property and should "handle" the property dispute in court.  (*Id.* ¶¶ 40–43.)  Schanz asserted that he had a right to be on the cemetery abutting the church, to which Meyer responded that Schanz was only barred from "[t]he immediate property

3

which the church is on." (*Id*. ¶ 43.)  Despite Schanz's request, Meyer refused to come out to the church to stop the demolition. (*Id.*)

Schanz then called the dispatcher for the Sheriff's Office and asked that the sheriff be sent to the church.  During the call, a member of the demolition crew told Schanz that he needed to leave church property.  When Schanz refused, the man attempted to attack Schanz with a bat, which he swung at Schanz's head and then threw at him.  (*Id.* ¶ 45.)  Schanz repeatedly asked the dispatcher to "send the cops right away." (911 Call Recordings 9:20–10:20, Am. Compl. Ex. 2.) The dispatcher indicated that "we have help coming out to you." (*Id.* at 10:12–15.)  Schanz continued to talk to the dispatcher, indicating that a member of the demolition crew was "waving his hands around like he's gonna hit me." (*Id.* at 10:50–55.)  He continued, "They're going to start this machine and wreck this thing." (*Id.* at 10:55–59.)  He then said, "I'm trespassing right now. I admit it.  You gotta send the Sheriff out right now." (*Id.* at 11:00–05.)  The dispatcher responded, "You said you're trespassing right now?" (*Id.* at 11:06–08.)  Schanz replied, "Yes, I am.  They told me not to come on the property, they're trying to demo[lish] this church and I have a right to defend it." (*Id.* at 11:08–11:13.)  He reiterated that the demolition crew had tried to attack him and kept saying, "Send the sheriff right away." (*Id.* at 11:15–27.)  The dispatcher told him that help was coming but he needed to leave the church property; Schanz responded that he could not allow the demolition to take place until the sheriff arrived. (*Id.* at 11:28–37.)  Schanz said, "I know I have rights.  I'm on cemetery property.  It's public property." (*Id.* at 11:37–42.)

The dispatcher contacted Meyer and told him that "we have Kalvin back on . . . he is advising he is trespassing right now." (Dispatcher Call Recordings 1:25–1:29, Am. Compl. Ex. 4.) Meyer proceeded to the church, where he encountered Schanz.  Schanz was on cemetery property rather than church property; the boundary line was clearly demarcated with red stakes in the

ground.  (Am. Compl. ¶ 54.)  Nevertheless, Meyer arrested Schanz for misdemeanor trespassing, *see* Mich. Comp. Laws § 750.552.  (*Id.* ¶ 56.)  Meyer took Schanz to county jail, where he was held for several hours and then released on bond.  (*Id.* ¶¶ 58–59.)  The Township proceeded to demolish the church.  (*Id.* ¶ 60.)  On August 25, 2023, the trespassing charges against Schanz were dropped and he pled guilty to impeding traffic, a civil infraction.  (8/25/2023 Order & J., ECF No. 17-4.)

## II. LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed for failure to state a claim if it does not "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Id.* at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.

When considering a motion to dismiss under Rule 12(b)(6), courts "construe the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true." *Parrino v. Price*, 869 F.3d 392, 397 (6th Cir. 2017).  The court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

5

### III. ANALYSIS

#### A. Statute of Limitations

Defendants first argue that Schanz's § 1983 claims are barred by the statute of limitations. Courts apply state statutes of limitations to § 1983 actions. *Heard v. Strange*, 127 F.4th 630, 633 (6th Cir. 2025). "[T]he appropriate statute of limitations to be borrowed for § 1983 actions arising in Michigan is the state's three-year limitations period for personal injury claims." *Wolfe v. Perry*, 412 F.3d 707, 714 (6th Cir. 2005), *abrogated on other grounds by Wallace v. Kato*, 549 U.S. 384 (2007). Defendants argue that Schanz's Fourth Amendment false arrest claim is analogous to a malicious prosecution claim, and thus should instead be subject to the state's two-year statute of limitations for such claims, *see* Mich. Comp. Laws § 600.5805(7).[1] But all § 1983 claims arising in Michigan are governed by the same three-year statute of limitations; the limitations period does not adapt to match the underlying type of claim. *See City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 124 (2005) (rejecting "the proposition that the limitations period for a § 1983 claim depends on the nature of the underlying right being asserted"); *Wolfe*, 412 F.3d at 713–15 (applying Michigan's three-year statute of limitations to Fourth Amendment false arrest claim). All of Schanz's § 1983 claims are therefore subject to a three-year limitations period.

Schanz's arrest and the demolition of the church took place on January 16, 2023. That date is within three years of the date this action was filed (January 16, 2026). Schanz's Fourth Amendment claim is based on the arrest, and his takings claim is based on the demolition, so neither is time-barred. Schanz's due process claim is based on the alleged deprivation of his property that began when he was arrested and evicted, so it is not time-barred either. Thus,

---

[1] A state law false arrest claim appears to actually fall under § 600.5805(3), which applies to false imprisonment actions (of which false arrest is a species) and similarly imposes a two-year statute of limitations.

Defendants' statute of limitations argument fails, and the Court will turn to the merits of Schanz's claims.

### B. Procedural Due Process

Schanz argues that his arrest constituted an eviction without due process in violation of the Fourteenth Amendment.  As an initial matter, Defendants argue that Schanz cannot bring a due process claim regarding his arrest because arrest-related claims are only cognizable under the Fourth Amendment.  They cite *Albright v. Oliver* for the proposition that a due process claim does not lie when the alleged deprivation violated another constitutional provision.  510 U.S. 266, 273 (1994).  But *Albright* addressed substantive due process, not procedural due process, and thus does not govern here.  Rather, it appears that a plaintiff may bring both procedural due process and Fourth Amendment claims based on the same conduct.  *See, e.g.*, *Taylor v. City of Falmouth*, No. CV 03-142-DLB, 2005 WL 8165585, at *14–17 (E.D. Ky. Mar. 9, 2005); *HRSS, Inc. v. Wayne Cnty. Treasurer*, 279 F. Supp. 2d 846, 855 (E.D. Mich. 2003).  Moreover, Schanz's due process and Fourth Amendment claims do not entirely overlap.  The due process claim is based on the allegation that Defendants unlawfully dispossessed Schanz of his property.  Although they accomplished the dispossession through an arrest, the dispossession was a distinct harm for which Schanz does not raise a Fourth Amendment claim.

"[D]ue process generally requires notice and a hearing before the government deprives a citizen of his or her property, including in the context of an eviction."  *Mills v. County of Lapeer*, 498 F. App'x 507, 514 (6th Cir. 2012).  Defendants do not argue that they provided sufficient (or any) process to Schanz before taking the church; rather, they contend that Schanz had no property interest in the church at all.  Schanz argues that he bought the church via an oral contract with the Township through Kaylor, its agent.  This argument faces two obstacles: the statute of frauds, and

the absence of a deed transferring title.  However, as explained below, Schanz can overcome both obstacles at this stage.

### 1. Statute of Frauds

First, the statute of frauds requires that contracts for the sale of land be in writing and signed by the seller.  *Zurcher v. Herveat*, 605 N.W.2d 329, 334 (Mich. Ct. App. 1999); Mich. Comp. Laws § 566.108.  There is no allegation that Schanz and Kaylor executed a written contract regarding the church.  But "[u]nder the doctrine of partial performance, a party's performance may be sufficient to remove an agreement from the statute of frauds."  *Mendez v. Gonzalez-Bello*, No. 344993, 2019 WL 3849446, at *3 (Mich. Ct. App. Aug. 15, 2019); *see* Mich. Comp. Laws § 566.110.  The doctrine applies when "one party to an oral contract, in reliance upon the contract, has performed his obligation thereunder so that it would be a fraud upon him to allow the other party to repudiate the contract, by interposing the statute [of frauds]."  *Guzorek v. Williams*, 2 N.W.2d 796, 799 (Mich. 1942).

To determine whether the partial performance doctrine is satisfied in the context of a contract for the sale of land, courts look to whether the buyer has paid the purchase price, taken possession of the land, and/or made improvements to the property.  *See Nash v. Kerti*, No. 358494, 2023 WL 2437540, at *10 (Mich. Ct. App. Mar. 9, 2023); *McMahon Helicopter Servs., Inc. v. Mid-W. Dev., LLC*, No. 269982, 2007 WL 1828810, at *6 (Mich. Ct. App. June 26, 2007).  Schanz alleges that he paid the full purchase price and made significant improvements to the church.  He also presumably occupied it for several months while making the improvements.  These facts are

sufficient to establish that Schanz partially performed the contract, rendering it enforceable despite the lack of a written instrument.[2]

Defendants argue that Schanz cannot rely on the doctrine of partial performance because the Township's attempts to take back the property indicate that no contract existed.  But around three months elapsed between the oral contract and the first time that the Township told Schanz he needed to move the church.  Thus, by the time the Township attempted to repudiate the contract, Schanz had already paid the sale price and made extensive repairs.  At that point, the Township could not simply reverse course and recover possession of the property.

### 2. Delivery of Deed

The second obstacle to Schanz's asserted property interest is that land may generally only be conveyed through delivery of a deed.  *See Warson v. Warson*, No. 283401, 2009 WL 1564535, at *2 (Mich. Ct. App. June 2, 2009); *Southfield Sols., LLC v. Estell Manor, LLC*, No. 368038, 2025 WL 1134848, at *4 (Mich. Ct. App. Apr. 16, 2025); Mich. Comp. Laws § 566.106.  Schanz does not allege that the Township ever delivered a deed to him.  But delivery of a deed is only a prerequisite for transfer of *legal* title, not equitable title.  When parties agree to a land contract and the deed has not yet been delivered, the buyer acquires equitable title to the land.  *See In re Est. of Moukalled*, 714 N.W.2d 400, 406 (Mich. Ct. App. 2006).  "At the point of the signing of the land contract, the vendee acquires 'seisin' and a present interest in the property that may be sold, devised, or encumbered."  *Id.* (cleaned up).  Thus, when Kaylor and Schanz agreed to transfer title to the church in exchange for a dollar, Schanz acquired an equitable interest in the property even without delivery of a deed.

---

[2] It is true that "[t]he doctrine of partial performance applies only if the contract sought to be enforced is established by clear and convincing evidence," *Mendez*, 2019 WL 3849446, at *5, but evidentiary considerations play no role at the motion to dismiss stage.

Defendants argue that Schanz could not have acquired an interest in the church because the Township Board never agreed to give him the property. But Kaylor allegedly told Schanz that the Board had authorized the deal, which supports the reasonable inference that the Board did, in fact, authorize the deal. Defendants also contend that a single member of the Township Board lacks the power to unilaterally bind the Township. Be that as it may, Kaylor suggested to Schanz that he was communicating a contractual offer to which the Board had already agreed. If the Board authorized the offer, Kaylor was merely transmitting the offer as an agent, and Schanz's acceptance could create a binding contract.

Under Michigan law, owning an equitable interest in a property entitles one to possess or occupy that property unless the land contract specifies otherwise. *See Briggs v. Mason*, No. 357863, 2023 WL 322797, at *6 (Mich. Ct. App. Jan. 19, 2023) ("[A] land contract vendee is entitled to possession of the premises unless the pertinent land contract, for whatever unusual reason, does not allow for possession[.]"). Here, Schanz's oral contract with the Township allowed him to occupy the property; for one thing, the contract contemplated that Schanz would make improvements to the church, which he could not do without entering the property. And it appeared to be the understanding of the parties that Schanz would immediately take possession of the property after paying. Kaylor did not clarify that Schanz could only take possession after a deed was delivered, and indeed he promptly gave Schanz the key to the church.

Given that an equitable interest in land is a property interest under Michigan law, *see Hall v. Meisner*, 51 F.4th 185, 196 (6th Cir. 2022), the deprivation of that interest without due process violates the Fourteenth Amendment. *Sinclair v. Meisner*, No. 22-1264, 2022 WL 18034473, at *3 (6th Cir. Dec. 29, 2022) (applying *Hall* to due process claim); *see also Brown v. Hitchcock*, 173 U.S. 473, 478 (1899) (a person "may not be dispossessed of his equitable rights without due

10

process of law").  Because Schanz alleges that Defendants did not provide him any process when they evicted him from the church, he has stated a Fourteenth Amendment claim.

### 3. Proper Defendants

An additional question remains, however, as to which Defendants Schanz has stated a due process claim against.  The Township argues that it may not be held liable because it had no role in Schanz's removal from the property.  "[U]nder § 1983, local governments are responsible only for their own illegal acts.  They are not vicariously liable under § 1983 for their employees' actions." *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) (alteration in original) (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011)); *see also Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978)*.*  However, a local government may be held liable for its "official polic[ies] or legislative enactment[s]." *D'Ambrosio*, 747 F.3d at 386 (cleaned up).  Schanz alleges that the Township Board of Supervisors agreed to give him the property, then voted to reassert the Township's ownership of the property.  The decisions of the Township Board are presumably official acts of the Township.  Given that the deprivation of Schanz's property directly resulted from the Township's attempt to reclaim the land, Schanz has sufficiently stated a § 1983 claim against the Township.

Kaylor and Meyer do not dispute that they caused the alleged deprivation of property, but they assert a qualified immunity defense.[3]  "Qualified immunity shields federal and state officials from money damages unless a plaintiff . . . show[s] (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 275 (6th Cir. 2020) (quoting *Ashcroft*

---

[3] Although the Township also appears to assert qualified immunity, "[i]t is well-established that the defense of qualified immunity is not available to a governmental entity." *Duren v. Byrd*, No. 1:18-cv-84, 2021 WL 3848105, at *12 n.8 (M.D. Tenn. Aug. 26, 2021); *Everson v. Leis*, 556 F.3d 484, 493 n.3 (6th Cir. 2009).

*v. al-Kidd*, 563 U.S. 731, 735 (2011)).  "A right is clearly established for purposes of overcoming the qualified immunity defense only when 'existing precedent [has] placed the statutory or constitutional question beyond debate,' although [courts] do not require 'a case directly on point.'" *Id.* (quoting *al-Kidd*, 563 U.S. at 741) (first alteration in original).  "[I]t is [the plaintiff]'s burden to identify a closely analogous precedent with 'facts like the ones at issue here' that placed the constitutional question beyond debate" at the time the violation occurred.  *Feagin v. Mansfield Police Dep't*, 155 F.4th 595, 603 (6th Cir. 2025) (quoting *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021)).

The Court finds that Meyer and Kaylor are entitled to qualified immunity because Schanz fails to identify case law clearly establishing his property right over the church.  To overcome qualified immunity, Schanz must show that the property right of which he was deprived was clearly established.  *See Waeschle v. Dragovic*, 576 F.3d 539, 550 (6th Cir. 2009) (qualified immunity barred due process claim where underlying property right was not clearly established).  Kaylor and Meyer could have reasonably believed that the oral contract at issue here was void due to the statute of frauds, and thus that Schanz had no right to possess the church.  While this belief was mistaken for the reasons set out above, the partial performance inquiry involves a flexible equitable standard and reasonable minds can differ as to its application.  Schanz does not identify any sufficiently similar case that would clearly establish the enforceability of the oral contract here.  Thus, the individual Defendants are entitled to qualified immunity on Schanz's due process claim.[4]

---

[4] The enforceability of the contract may have been clearly established if Schanz had *fully* performed.  But the contract required Schanz to "repair, preserve, and maintain the church and the surrounding property for the public good."  (Am. Compl. ¶ 22.)  Schanz does not allege that he fully performed this obligation, and indeed the obligation appears to be perpetual.

### C. False Arrest

Next, Schanz alleges that Defendants arrested him without probable cause, in violation of the Fourth Amendment. "Generally, probable cause exists when the police have reasonably trustworthy information . . . sufficient to warrant a prudent man in believing that the [plaintiff] had committed or was committing an offense." *Ouza*, 969 F.3d at 279 (omission in original) (cleaned up) (quoting *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000)). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Id.* (quoting *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)). The fact that Schanz had a right to occupy the church is not dispositive as to the question of probable cause, as Meyer may have been reasonably mistaken as to Schanz's property rights.

Meyer's mistake was reasonable here because Schanz told the 911 dispatcher he was trespassing, implying he had given up his claim to the church. Schanz avers that the dispatcher refused to send the sheriff despite the danger Schanz was in, and he thought admitting to trespassing would cause Meyer to come to the church. But Schanz's characterization of the 911 call is erroneous, as the dispatcher actually told Schanz that help was on the way almost a minute before Schanz admitted to trespassing. (911 Call Recordings at 10:12–10:15); *see Kaplan v. Univ. of Louisville*, 10 F.4th 569, 576 (6th Cir. 2021) ("When an exhibit contradicts the complaint, the exhibit trumps the allegations." (cleaned up).) Even assuming that Schanz admitted to trespassing as a tactical ploy, that fact would not have been obvious to the dispatcher, who was entitled to take Schanz at his word. Schanz also notes that after admitting he was trespassing, he added, "I know I have rights, I'm on cemetery property. It's public property." (Dispatcher Call Recordings 11:37–11:42.) But contrary to Schanz's contention, this statement does not amount to a reaffirmance of his ownership of the church. It was merely an assertion that he was allowed to be in the cemetery, a fact that was not in dispute.

13

Schanz contends that Meyer did not hear the 911 call and thus would not have known that Schanz admitted to trespassing.  Schanz claims that the dispatcher told Meyer that Schanz "is trespassing right now," but "did not tell Meyer that Schanz had told her he was trespassing."  (Am. Compl. ¶ 50.)  Thus, Meyer would only have believed that Schanz was on church property, not that he had relinquished his claim over it.  But this description of the facts is squarely contradicted by the recording, in which the dispatcher tells Meyer that Schanz "*is advising* he is trespassing right now."  (Dispatcher Call Recordings 1:25–1:29.)  It was reasonable for Meyer to infer from this statement that Schanz had admitted he did not have a right to be on the property.

Schanz also alleges that when Meyer arrived at the church, Schanz was on the cemetery side of the property line, where he was permitted to be.  Thus, one could argue that the probable cause created by Schanz's admission of trespassing was subsequently eliminated by Meyer's subsequent observation of Schanz *not* trespassing.  But given Schanz's admission that he was trespassing, it was reasonable for Meyer to assume that Schanz *had been* on the church side, and thus had trespassed.  Schanz also points out that the trespass statute under which he was arrested does not apply when a trespass is "committed in good faith under a claim of right or color of title." *People v. Johnson*, 168 N.W.2d 913, 916 (Mich. Ct. App. 1969).  But again, Schanz's admission to trespassing implied he no longer had a good faith basis to occupy the church.

In sum, Meyer had probable cause to arrest Schanz for trespass.  Schanz argues that his admission to the dispatcher does not eliminate liability for Kaylor, who did not hear the admission, or the Township, which acted through Kaylor.  But Schanz has not sufficiently tied Kaylor or the Township to his arrest.  It is true that two weeks earlier, Kaylor had told Meyer to remove Schanz from the property.  But given the significant time that had passed—and the intervening admission to trespassing—Schanz cannot show that Kaylor's prior direction caused Meyer to conduct the

14

arrest. *Reform Am. v. City of Detroit*, 37 F.4th 1138, 1158 (6th Cir. 2022) ("Like a tort plaintiff, a § 1983 plaintiff must establish both causation in fact and proximate causation."). Thus, he has not stated a false arrest claim against any Defendant.

### D. Unlawful Taking

Schanz also brings a takings claim against the Township. "The Fifth Amendment's Takings Clause provides that 'private property' shall not 'be taken for public use, without just compensation.'" *Hall*, 51 F.4th at 189 (quoting U.S. Const. Amend. V). As discussed above, Schanz's allegations establish that he had an equitable interest in the church. The Sixth Circuit has held, applying Michigan property law, that an equitable interest in real estate qualifies as a property interest subject to the Takings Clause. *Id.* at 196. There is no allegation that the Township provided Schanz any compensation when it took control of the church property. Thus, he has sufficiently alleged a violation of the Takings Clause.

### E. Fraud

Finally, Schanz brings fraud claims against Kaylor and the Township based on Kaylor's representation that the Township Board had agreed to sell the church to him. Schanz relies on the truth of this statement for his due process and takings claims, but argues in the alternative that if the Board did *not* agree to the deal, Kaylor made an intentionally false statement on which Schanz detrimentally relied.

Defendants argue that Schanz has not complied with Rule 9 of the Federal Rules of Civil Procedure, which requires a plaintiff alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "Although [Rule] 9(b) has been construed as requiring a plaintiff to set forth the time, place, and content of the alleged misrepresentation in fraud cases," the Court should "consider this particularity requirement with the more general policy stated in [Rule] 8, which favors simple, concise, and direct allegations in pleading." *Kaminski v. Teledyne*

15

*Indus., Inc.*, 121 F.3d 708 (6th Cir. 1997).  Thus, "[t]he Sixth Circuit reads rule 9(b)'s requirement liberally."  *Advoc. Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999) (cleaned up).  Ultimately, "[t]he purpose of Rule 9(b) is to provide fair notice to the defendant so as to allow him to prepare an informed pleading responsive to the specific allegations of fraud." *Id.*

Applying this standard, the Court finds Schanz's allegations sufficient to survive Defendants' motion to dismiss.  Schanz identifies the particular statement Kaylor made and the circumstances surrounding it with enough particularity to put Kaylor on notice of his claim. Defendants argue that Schanz failed to allege Kaylor's exact words or the precise dates on which the allegedly fraudulent statements were made, but Rule 9(b) does not set such a high bar for particularity.  *See Wilson v. Homecomings Fin. Network, Inc.*, 407 F. Supp. 2d 893, 895 (N.D. Ohio 2005) ("A specific date is not necessarily required to meet Rule 9(b)'s pleading requirements."); *SEC v. Arthur*, No. 20 CV 469, 2020 WL 5814559, at *3 (N.D. Ohio Sept. 29, 2020) (same).

Defendants next argue that "a broken promise alone does not constitute fraud."  (Mot. to Dismiss 14, ECF No. 26 (citing *Marrero v. McDonnell Douglas Capital Corp.*, 505 N.W.2d 275 (Mich. Ct. App. 1993)).  But Schanz is not alleging that Kaylor broke a promise; rather, he is alleging that Kaylor misrepresented the intentions of the Board.  Defendants also contend that "[o]bjective evidence—including the recorded deed and Plaintiff's admissions—defeats any claim of false representation or reasonable reliance."  (*Id.*)  However, the legal status of the property has no bearing on whether Kaylor falsely stated that the Board had agreed to sell the property, or whether Schanz could reasonably rely on that statement.  Thus, the Court will deny the motion to dismiss as to Schanz's fraud claims.

16

**F. Motion to Amend**

Also pending before the Court is Schanz's motion to amend.  Schanz seeks to add two paragraphs to his complaint: one providing additional support for the claim that the Township Board approved the sale of the church, and another detailing the improvements that Schanz made to the church.  The Court may deny leave to amend "where there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.'"  *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002) (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)).  Here, the amendment merely clarifies allegations that are already contained in the prior complaint, and the clarification does not affect any of the above analysis.  Therefore, the Court will deny the amendment because it would serve no practical purpose.

## IV. CONCLUSION

For the reasons explained above, the Court will grant in part and deny in part Defendants' motion to dismiss.  The Court will dismiss Schanz's claims for false arrest against all Defendants and his due process claims against Meyer and Kaylor, and dismiss Meyer from the case.  Schanz's surviving claims are his takings claim and due process claim against the Township and his fraud claims against Kaylor and the Township.  The Court will also deny Schanz's motion to amend his complaint.

An order will enter in accordance with this Opinion.


Dated: July 15, 2026                                    /s/ Hala Y. Jarbou
                                                        HALA Y. JARBOU
                                                        CHIEF UNITED STATES DISTRICT JUDGE